# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 28, 2010

No. 09-40264
Summary Calendar

Lyle W. Cayce
Clerk

MONTY MARCELLUS SHELTON,

Plaintiff-Appellant,

v.

JOHN B. FOX, Warden, C. QUESENBERRY, Captain; NANCY BOBS, Superintendent of Education; and JAMES PAUL, Education Specialist,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:07-CV-462

Before JOLLY, WIENER and ELROD, Circuit Judges.

PER CURIAM:[*]

*Pro se* plaintiff-appellant Monty Shelton, an inmate incarcerated at the Federal Correctional Complex-Medium Security in Beaumont Texas, appeals the district court's grant of summary judgment in favor of defendant-appellee James Paul on Shelton's action brought in accordance with *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He also appeals the denial of his request for discovery and the court's dismissal of his claims against

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 09-40264

defendants John B. Fox and Nancy Bobs.    For the following reasons, we AFFIRM.

I.

In recounting the circumstances regarding Shelton's termination, we view the facts in the light most favorable to Shelton, the non-movant. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 651-52 (5th Cir. 2006).    Shelton was hired as a computer lab tutor at the Federal Correctional Complex-Medium Security in Beaumont on July 17, 2006.    His duties included assisting the computer lab instructor in teaching computer software and hardware to inmates and reporting computer malfunctions to Paul, who was his direct supervisor.    The network in the computer lab was working without issue when Paul began his employment.    Shelton contends that sometime in 2006, Paul, Fox, and Bobs authorized the installation of a new network.    When the network restrictions began interfering with inmate instruction, Shelton assisted Paul as he called the BOP office responsible for the network to report the problem.    While Paul was on the phone with that office, Shelton reminded him that an outside contractor had recommended removing certain network restrictions.    Shelton contends that Paul became upset by his recommendation and ordered him out of the room.    Shelton characterizes his actions as an exercise of his First Amendment right to report "fraud being perpetrated against the U.S.," as he contends that the authorization of the new network constituted "misappropriation of U.S. government funds and/or his gross incompetence."

Hours after this incident, Paul informed Shelton that he might not be able to retain his job because his photo appeared in the Posted Picture File, which contains pictures of high profile inmates and inmates whose special skills cause them to be security risks.    Paul also told him that the computer services department determined that Shelton's computer expertise precluded him from

2

having access to computers.[1] As a result, Shelton was terminated from his position, and he subsequently filed a grievance. He was reassigned several weeks later to a position as an education aide—a job in the same department at the same pay grade as the lab tutor position.

In June 2007, Shelton filed a *Bivens* action against the defendants alleging that James Paul, an education specialist at the Federal Correctional Complex-Medium, retaliated against him in violation of his First Amendment rights. His original complaint alleged that he was retaliated against when the defendants refused to reinstate him after he filed a grievance. His First Amended Complaint added the additional allegation that he was retaliated against both for filing grievances and for reporting Paul's alleged fraud. In May 2008, the magistrate judge entered a *sua sponte* Report and Recommendation advising that the claims against John Fox, C. Quesenberry, and Nancy Bobs be dismissed as frivolous and for failing to state a claim. Shelton filed his First Amended Complaint against all defendants on June 23, 2008. On July 1, Paul filed a motion for summary judgment arguing that there were no genuine issues of material fact regarding Shelton's claims.

Following the partial grant of summary judgment, Shelton filed objections to the magistrate judge's recommendation that his claims against Fox and Bobs be dismissed, but he agreed to the dismissal of claims against Quesenberry. He also filed a motion for subpoena for five witnesses on issues related to his *Bivens claim*. The magistrate judge denied his motion for discovery on January 15, 2009. Later that month, the district judge overruled Shelton's objections to the

---

[1] Paul disputes the accusation that Shelton's termination had anything to do with the telephone incident. According to Paul, at the time Shelton was hired in July 2006, there was no record of him in the Posted Picture File. However, in May 2006, Gerhart Bradley evaluated Shelton for an inmate computer clearance, and he determined that due to his extensive experience with computers and software, Shelton should not have access to computers. Paul contends that Shelton was terminated in October solely on the basis that Paul's picture appeared in the Posted Picture File and because of the May 2006 determination.

No. 09-40264

magistrate judge's Report and Recommendation and entered partial judgment dismissing the claims against Fox, Quesenberry, and Bobs. The magistrate judge issued another Report and Recommendation advising that Paul's motion for summary judgment be granted and that the case be dismissed with prejudice, to which Shelton filed a subsequent objection. In February 2009, the district judge overruled Shelton's objections and granted Paul's motion for summary judgment, ordering that Shelton's claim be dismissed with prejudice. Shelton has since filed a timely appeal.

## II.

This court reviews grants of summary judgment *de novo*. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). The party requesting summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the denial of a discovery order for abuse of discretion. *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989).

## A. Retaliation Claim

Shelton contends that the district court's grant of summary judgment was in error because material issues of fact exist concerning his *Bivens* action. The district court granted summary judgment in favor of Paul on two grounds: (1) his termination did not rise to the level of actionable retaliation, and (2) he failed to demonstrate that he would not have lost his job in the computer lab but for a retaliatory motive. Shelton disputes both conclusions, and he also contends that the district court erred by considering his claim as one of retaliation for filing

4

grievances when it did not also consider his allegation that he was retaliated against for exercising his First Amendment right to report "fraud" in BOP's purchase of computer equipment. Because we agree that Shelton's termination and reassignment to another job do not constitute actionable retaliation, we need not reach the second ground for the district court's holding.

An action taken in retaliation for the exercise of a constitutional right is actionable at law, even if that act might have been legitimate had it been taken for another reason. *See Woods v. Smith,* 60 F.3d 1161, 1165 (5th Cir. 1995). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). A prisoner may only prevail if the retaliatory act challenged is one which "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation and internal quotation marks omitted). *De minimis* claims of retaliation do not rise to the level of a constitutional violation and may not form the basis of a *Bivens* action. *See id.*

Shelton strongly advocates that his firing resulted from his decision to report fraud relating to the BOP's purchase of computer equipment, but accepting his version of events as true, we are unable to find that the alleged retaliatory action "would prevent a person of ordinary firmness from further exercising his constitutional right" to speak out in comparable circumstances. *Id.* After Shelton was fired from his position as a computer lab assistant, he was reassigned weeks later to work as an education aide—a position at the exact same pay grade as his former job. In *Morris v. Powell*, we held that a job transfer "do[es] not rise to the level of actionable retaliation." 449 F.3d 682, 687 (5th Cir. 2006). In that case, a prisoner claimed that he was retaliated against

for filing grievances when he was transferred from his commissary job to the kitchen for approximately six weeks, during which he spent a day working in an unpleasant work station. He was then transferred to the butcher shop, and he made no complaints about working in that position. Although the prisoner claimed that the job transfer was actionable retaliation, we held that his allegation did not rise to the level of a constitutional violation. We explained that although "transfers may have had a retaliatory motive, and [he] may have experienced discomfort for a few days as a result, . . . there is no evidence that the job transfers were more than de minimis. The standard adopted herein is designed to discourage precisely such claims of inconsequential retaliation." *Id.*

Where Shelton does dispute Paul's contention that he was ultimately reassigned to another job in the same department which had the same pay grade as his prior position, we find this situation to be largely analogous to *Morris*. Although weeks passed between his termination and his subsequent reassignment as an education aide, Shelton has not provided any information regarding his loss of income that suggests a constitutionally-cognizable injury, nor does he suggest that his new employment was somehow inferior to his prior job. Thus, even assuming *arguendo* that Shelton was terminated from his job as a computer lab tutor in retaliation for exercising a constitutional right,[2] any harm does not rise to the level of a constitutional violation. *See Bibbs*, 541 F.3d at 270 (5th Cir. 2008).

---

[2] Shelton contends that the district court erred by basing its holding only on the claims raised in his original complaint—that he was fired in retaliation for filing grievances—rather than considering the allegations in his First Amended Complaint—which alleged that he was fired both for filing grievances and for exercising his First Amendment right to bring the "fraudulent network" to the attention of Paul's superiors. We conclude that any error is in this regard is ultimately immaterial because his termination and subsequent reassignment to a comparable position constitute, at most, *de minimis* retaliation. *See Morris*, 449 F.3d at 687.

No. 09-40264

B.    Denial of Discovery

Shelton also alleges that the magistrate judge erred by denying his August 2008 motion to subpoena five witnesses.  Particularly, he sought to depose Gerhart Bradley regarding written statements and allegations made in his sworn declaration, and he intended to depose other witnesses regarding issues related to his employment within BOP's education department.[3]  We review the district court's denial of a discovery motion for abuse of discretion.  To prevail, Shelton must show that he "was prejudiced by the denial of his discovery motion." *United States v. Felts,* 497 F.2d 80, 82 (5th Cir. 1974).

Our review is complicated by the magistrate judge's failure to provide reasons for denying Shelton's discovery request.  In circumstances involving "appellate review of a denial of a motion for abuse of discretion[,] we and other courts have held that a district court's denial of such a motion, unaccompanied by reasons[,] either written or oral[,] may constitute an abuse of discretion." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  Here, however, Shelton has not established that the denial of discovery prejudiced him.  Shelton contends that he filed the motion for subpoenas so that he might conduct depositions with witnesses with the goal of showing that he was actually fired in retaliation for reporting that Paul was defrauding the United States government.  Specifically, he submits that the depositions would have disproved Paul's proffered legitimate justification for the termination.  But even assuming that Shelton received the requested discovery and discredited Paul's justification, his claim would fare no better.  Regardless of the motivation for his firing, Shelton's termination—when accompanied by a reassignment to a comparable job in the same department at the same pay level—does not rise to the level of a constitutional violation.  *See Bibbs*, 541 F.3d at 270 (5th Cir. 2008).

---

[3] Shelton also argues that he filed motions to produce and compel documents, but the record contains no evidence of such motions.

No.  09-40264

C.  Dismissal of Shelton's Claims against Fox and Bobs

Finally, Shelton challenges the district court's dismissal of his claims against defendants Fox and Bobs. Shelton's argument on this issue is conclusory and unavailing.

Accordingly, the judgment of the district court is AFFIRMED.